UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

T-Rex Property, AB,                                              Civil No. 16-2018 (DWF/BRT)

          Plaintiff,

v.                                                      **MEMORANDUM**
                                                      **OPINION AND ORDER**

Cedar Fair, L.P.,

          Defendant.

---

David P. Swenson, Esq., and Peter Thomas, Esq., Farney Daniels PC, counsel for Plaintiff.

Bryan A. Schwartz, Esq., and Steven M. Auvil, Esq., Squire Patton Boggs (US) LLP; and Kathryn N. Hibbard, Esq., Greene Espel PLLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant Cedar Fair, L.P. ("Cedar Fair" or "Defendant") (Doc. No. 19). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

This is a patent infringement case involving U.S. Patent No. RE39,470 (the "'470 Patent"), entitled "Digital Information System"; U.S. Patent No. 7,382,334 (the "'334 Patent"), entitled "Digital Information System"; and U.S. Patent No. 6,430,603 (the "'603 Patent"), entitled "System for Direct Placement of Commercial Advertising, Public

Service Announcements and Other Content on Electronic Billboard Displays" (collectively, the "Patents-in-Suit"). (Doc. No. 1 ("Compl.") ¶¶ 27-76 & Exs. A-C.)[1] On June 20, 2016, Plaintiff T-Rex Property AB ("T-Rex" or "Plaintiff") sued Cedar Fair for infringement of certain claims of the Patents-in-Suit. In lieu of filing an answer, Cedar Fair moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that each claim of the Patents-in-Suit is invalid under 35 U.S.C. § 101 and, in particular, under *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

**A.     The Parties**

T-Rex is a Swedish corporation founded by Mats Hylin and Mats Dahlgren, two of the named inventors of the '470 Patent and the '334 Patent. T-Rex is involved in the field of digital signage, which is an alternative to physical advertising, such as advertising using paper copy on billboards.

Cedar Fair operates regional amusement and resort parks. (Compl. ¶ 5.) In its Complaint, T-Rex alleges that Cedar Fair operates devices and systems, including its "FunTV network of digital screens that are located throughout the guest areas of its amusement parks, including ride and restaurant queues and in high traffic areas," that infringe the asserted claims. (Compl. ¶¶ 30, 50, 68.)

---

[1]     The '470 Patent is a reissue of U.S. Patent No. 6,005,534 (the '534 Patent) (not asserted in this case); the '334 Patent is a continuation-in-part of the '534 Patent. The '603 Patent is not part of the same family as the '470 Patent and '334 Patent.

**B.     The Patents-in-Suit**

Each of the asserted patents generally relates to digital information systems for displaying information on at least one display means, such as a screen, projector, or electronic billboard.  (*See, e.g.*, '334 Patent at Abstract; '470 Patent at Abstract.)  T-Rex asserts that the inventions reflected in the Patents-in-Suit are aimed at addressing an unmet need among advertisers for increased speed, flexibility, and the ability to dynamically change digital messages.  In addition, T-Rex asserts that the Patents-in-Suit are directed to a concrete system for collecting display instructions from external content providers, organizing the display content at a central computer, and then displaying the content on electronic displays such that mediators are able to dynamically control the displays in real time.

**1.     The '470 Patent**

The '470 Patent is directed to a digital information system (method and apparatus) for displaying information in places frequented by the general public, such as railway stations, subway stations, and airport waiting areas.  ('470 Patent at c. 1, ll:15-25.)  The patent identifies a problem with static display systems that are used and controlled on the display site and where the information displayed cannot be updated or changed quickly.  (*Id*. at c. 2, ll:5-33.)  The '470 Patent, in contrast, is directed to a "flexible system" that allows for the control, in real time, of the display of "pictures, images, messages and announcements to be configured in accordance with modern digital technology, therewith providing rapid communication."  (*Id*. at c. 2, ll:40-52.)  A further object of the invention is to enable information to be changed as often as desired, in real time, and in places that

3

are mutually far apart. (*Id.* at c. 2, ll: 50-55.) To achieve this end, the alleged invention of the '470 Patent operates via a central computer that is divided into three servers, one of which receives information from "external information mediators," via modems. (*Id.* at c. 6, ll:65-67.) An "information mediator" might be, for example, an advertising agency who wishes to use the system for commercial purposes. (*Id.* at c. 5, ll:18-21.) The central computer uses instructions received by the "information mediator" to send to the displays. (*Id.* at c. 7, ll:1-9.) In this action, Plaintiff asserts claims 25 and 26[2] of the '470 Patent, which read as follows:

> 25. A method of selectively displaying digital information at one or more of a plurality of locations, said method comprising:
> receiving control instructions from at least one external information mediator;
> using said control instructions to generate an exposure list, said exposure list specifying three or more of the following items:
> i) what information content is to be displayed;
> ii) at which of said plurality of locations said information content is to be displayed;
> iii) when said information content is to be displayed for each location at which content is to be displayed; and
> iv) how long said information content is to be displayed for each location at which content is to be displayed;
> displaying images at one or more of said locations in accordance with said exposure list; and
> permitting said exposure list to be dynamically updated.
>
> 26. A system for selectively displaying digital information at one or more of a plurality of locations, said system comprising:
> a computerized control center having a plurality of communication interfaces for receiving control instructions from at least one external information mediator, said

---

[2] T-Rex points out that it has not yet been required to submit Infringement Claim Charts, and that it expects to identify *at least* the claims identified in the Complaint.

>       computerized control center including means for generating
>       and dynamically updating an exposure list from said control
>       instructions, said exposure list specifying three or more of the
>       following items;
>       i) what information content is to be displayed;
>       ii) at which of said plurality of locations said information
>           content is to be displayed;
>       iii) when said information content is to be displayed for each
>            location at which content is to be displayed; and
>       iv) how long said information content is to be displayed for
>           each location at which content is to be displayed;
>    a computerized device situated at each one of said plurality of
>       locations, each computerized device being electronically coupled
>       to said computerized control center; and
>    a means for displaying images in accordance with said exposure list
>       associated with each one of said computerized devices.

('470 Patent at claims 25, 26.) The method claim 25 cites four limitations: (1) the receipt of instructions from a company or private individual; (2) the use of the received instructions to generate an exposure list that contains what information to display, as well as where, when, and how long to display the information; (3) the display of information in accordance with the exposure list; and (4) the updating of the exposure list dynamically. Claim 26 recites a system comprised of a central computer, a computerized device at the display location, and a means for displaying images (i.e., a projector) that implements the method steps of claim 25.

### 2. The '334 Patent

The '334 Patent is a continuation-in-part of the '470 Patent, with the relevant difference being that the '334 Patent's description of the invention explains that the information to be displayed is sent to televisions or cameras to be displayed in cinemas, private homes, on-board aircrafts, and on-board trains, etc. ('334 Patent at c. 1, ll:

12-24.)  The '334 Patent describes a system "comprised of a control center **12** having a communication interface **14** which connects an unlimited number of computerized devices **16**, **18**, **20**, which are placed at desired distances from one another for the control of television sets **40** or cameras **22**."  ('334 Patent at c. 5, ll:59-63.)

Plaintiff asserts claims 22 and 32 of the '334 Patent, which read as follows:

> 22.  A method of coordinating and controlling electronic displays in a digital information system for exposing information on at least one display device through the medium of at least one electronic display, characterized in that it comprises the following steps:
>> generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be exposed;
>> using a control center for coordinating and controlling electronic displays, wherein the control center is able to create and update said exposure list in real time with control instruction fields via dynamic booking of information in time for exposure from mediators; and
>> wherein the exposure list enables each electronic display to be controlled, independently of other electronic displays, to receive the same or different information in accordance with the exposure list for exposure of respective electronic display.
>
> 32.  An arrangement for coordinating and controlling electronic displays in a digital information system for displaying information on at least one display device through the medium of at least one electronic display, said information being supplied by mediators of information, for exposure or display, characterized in that it comprises:
>> computerized control center means, wherein the control center has communication interfaces against;
>> computerized means for coordinating and controlling electronic displays;
>> exposure handler means whereby the control center functions, in real time and through the medium of said exposure handler, to create and update an exposure list having control instruction fields, via dynamic booking of display information from mediators; and

6

>    wherein said exposure list, containing control instructions, coordinates and controls the electronic displays in question with respect to what shall be exposed, where it shall be exposed, when it shall be exposed, and for how long it shall be exposed, and enables each electronic display independently of other electronic displays, to receive the same or different information according to the exposure list for exposure or display by respective electronic display.

('334 Patent at claims 22, 32.)

### 3. The '603 Patent

The '603 Patent purports to solve problems with outdoor advertising such as "cost, single message content, [and] lack of content changeover capability" of conventional billboards by providing a system and method that permits "commercial advertisers, such as consumer product companies and the advertising agents that represent them, [to] directly access a network of multiple large, high resolution electronic displays located in high traffic areas and directly send their own advertisements electronically to the network to be displayed at locations and times selected by the advertisers." ('603 patent at c. 1, ll:44-45-c. 1, ll:66-c. 2, ll:5.)

Plaintiff asserts claims 42 and 43 of the '603 Patent, both of which are dependent on claim 13:

>    13. A system for presenting video or still-image content at selected times and locations on a networked connection of multiple electronic displays, said system comprising:
>    a network interconnecting a plurality of electronic displays provided at various geographic locations;
>    means for scheduling the presentation of video or still-image content at selected time slots on selected electronic displays of said network and receiving said video or still-image content from a content provider;

>    transmission means in communication with said receiving means
>       for communicating scheduled content to respective server
>       devices associated with corresponding selected electronic
>       displays of said network, each said associated device
>       initiating display of said video or still-image content at
>       selected times on a corresponding selected electronic display
>       of said network.
>    . . .
>
>    42.  The system of claim **13**, further including means for
> enabling split screen images to be displayed at the electronic display.
>
>    43.  The system of claim **42**, wherein said split screen capability
> is utilized to present a still image portion of the image in one display
> area, and one of real time video, near real time video, or still frame
> in a second display area.

('603 Patent at claims 13, 42, 43.)  Claim 42 adds the limitation of split screen capability to claim 13.  Claim 43 adds the limitation of the ability to display video on one portion of the split screen and a still image on the other side of the split screen.

## DISCUSSION

**I.    Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits

8

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Where a motion to dismiss is based on a claim of patent ineligible subject matter, dismissal will generally be unwarranted unless the "*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, Civ. No. 16-212, 2016 WL 4639140, at *1 (D. Del. Sept. 6, 2016) (emphasis in original); *accord Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). In a patent case, success on a motion to dismiss is made more difficult by the presumption of validity that attaches to patents. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid . . . [and t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."). While not

9

all courts have extended this presumption to challenges of validity under § 101, the Court agrees with the decisions that have applied the statutory presumption of validity. *See, e.g.*, *Proto Labs, Inc. v. Ico Products, LLC*, Civ. No. 15-2562, 2016 WL 4974951, at *5 (D. Minn. Sept. 16, 2016) (citing cases and applying the statutory presumption of validity).

Under § 101, the range of patentable subject matter includes "any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Despite the broad language of § 101, "laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (citation omitted). The Supreme Court has developed a two-part test to distinguish between patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, a reviewing court determines whether the patent or patents at issue "are directed to a patent-ineligible concept." *Id*. If the patents are so directed, then the court must move to step-two and "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297, 1298). The second step has been described as a "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotations omitted). The two steps are related and often involve overlapping scrutiny of

the content of the claim:  the first-step looks at the "focus" of the claim, its "character as a whole," and the second-step (where reached) looks more precisely at what the asserted claim elements add—specifically, whether the elements identify an "inventive concept" in the application of the ineligible matter to which the claim is directed.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).

**II.    Discussion**

Cedar Fair argues that the asserted claims of the Patents-in-Suit are not directed to patent eligible subject matter and are, therefore, invalid under § 101 and fail the *Alice* test.  First, Cedar Fair argues that the claims at issue are all directed to the abstract idea of collecting display instructions from a third party, organizing the display content at a central computer, and then displaying the content on conventional electronic displays.  Cedar Fair points out that a patent claim may be abstract if it is directed at "a fundamental economic practice," a "method of organizing human activity," or a "longstanding," "routine," or "conventional" practice.  *See Alice*, 134 S. Ct. at 2356; *see also Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).  Cedar Fair further argues that the claimed limitations encompass both fundamental economic practices (advertising on a digital medium) and basic methods of organizing human activity (notifying flight passengers of departures).  *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354 (holding on summary judgment that claims directed to the "process of gathering and analyzing information of a specified content, then displaying the results" without "any particular assertedly inventive technology for performing those functions" are abstract).  Cedar Fair

11

submits that limiting the alleged inventive idea here to the field of digital signage or advertising does not save it from abstraction and that using language associated with computers (such as "control instructions" and "control center") does not alter the abstract nature of the claims.  Finally, Cedar Fair maintains that, moving to the second step of *Alice,* the steps and components recited in the claims of the Patents-in-Suit do not add an inventive component sufficient to transform the abstract idea into one that is patent-eligible.  Specifically, Cedar Fair asserts that each step of the asserted claims recites a purely conventional computer functionality and that the steps simply claim a series of limitations that recite generic steps of controlling, coordinating, and displaying digital signage.

       T-Rex disagrees and argues that it has provided a "uniquely-detailed" Complaint setting forth how the claimed invention satisfies the underlying considerations of *Alice*, including attached declarations and technical exhibits to establish the state of the art at the time of the invention, the problem to be solved, and the technical innovations of the invention.  T-Rex also argues that Cedar Fair offers a broad and inaccurate description of the asserted claims and submits instead that the Patents-in-Suit are not limited to merely an abstract idea and, even if they were, they would satisfy the second *Alice* step.  T-Rex maintains that taking the uncontested facts in the pleading to be true and construing all reasonable inferences in its favor leads to a conclusion that the presumptively-valid claims of the Patent-in-Suit relate to patent eligible subject.  Specifically, T-Rex asserts that the system and method claims of the Patents-in-Suit:  relate to coordinating and controlling electronic displays and describe specific interconnected hardware and

software—"computerized control center means" and "exposure handler means"—along with the actual physical displays screens (*see* '334 Patent, claim 32); require "a computerized control center" plus a separate connected "computerized device situated at each" location where a physical sign is coordinated and controlled to display information (*see* '470 Patent, claim 26); and claim a geographically dispersed network of digital signage, interconnected with concrete transmission, with claims adding the coordinated scheduling of split-screen images and real-time video (*see* '603 Patent, claims 13, 42, 43).

T-Rex also argues that the asserted patent claims plausibly include additional meaningful limitations so as to satisfy step-two of *Alice*. In support, T-Rex argues that its invention arose in 1996 when the inventors came up with a solution to resolve particular problems with the way advertisements and certain other information could be presented to the public and that the invention specifically addressed the problem of a lack of coordination, as well as the inability to control items individually and dynamically. T-Rex further submits that the solution described in the Patents-in-Suit includes a concrete combination of devices, interfaces, and software, that when networked together to create physical displays, solve the above-identified problems.

Here, the parties appear to be in agreement that the asserted claims are directed to a method and system for a third party (such as an advertiser or an airline) to display targeted information (advertisements or airline schedules) on an electronic display in accordance with instructions specifying the location and time of the display. (*See, e.g.*, '470 Patent at c. 1, ll:27-31; '334 Patent at c. 5, ll:33-45; '603 Patent at c. 2, ll:16-18.)

While the Court finds some merit to Cedar Fair's position that the patents are directed to an abstract idea, the Court also concludes that under step two of *Alice*, T-Rex sufficiently alleges and demonstrates, at this early stage in the litigation, that the patent claims set forth concrete ordered combinations of elements that plausibly transform the claimed subject matter (and any conventional computer technology) into an inventive concept, particularly when viewed in light of what was considered conventional at the time of the invention. Moreover, the Court notes that at this early stage, no discovery has occurred and no experts have been engaged or deposed. Viewing the allegations in the Complaint in the light most favorable to T-Rex and construing all reasonable inferences in T-Rex's favor, the Court has no basis on which to disagree with the allegations made by T-Rex, particularly at the motion-to-dismiss stage. That, combined with the presumed validity of the Patents-in-Suit, Cedar Fair's motion is properly denied. However, that being said, the Court does not foreclose the possibility that Cedar Fair could be successful in challenging the validity of the patents at the summary judgment stage. It is entirely possible that, after discovery and further development of the record, Cedar Fair will be successful in demonstrating that the asserted claims are invalid.[3]

---

[3] The Court's decision is in line with other cases where § 101 invalidation challenges have been denied at the motion-to-dismiss stage. *See, e.g.*, *Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [19]) is **DENIED**.

Dated:  June 2, 2017                              s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge